1  **MILLSTEIN & ASSOCIATES PC**
2  David J. Millstein
   Email: dmillstein@millstein-law.com
3  California Bar No. 87878
4  100 The Embarcadero, Ste Penthouse
   San Francisco, CA 94105
5  Telephone: 415-348-0348
6  Facsimile: 415-348-0336

7  **WALLACE AND GRAHAM, P.A.**
8  Mona Lisa Wallace, N.C. State Bar #9021*
   Email: Mwallace@wallacegraham.com
9  John Hughes, N.C. State Bar # 22126*
10 Email: Jhughes@wallacegraham.com
   Olivia Smith, N.C. State Bar # 58375*
11 Email: Osmith@wallacegraham.com
12 525 N. Main Street
   Salisbury, NC 28144
13 Telephone: (704) 633-5244
14 Facsimile:  800-849-5291
   *pro hac vice application to be filed
15

16 *Attorneys for Plaintiff:*
   CARLO REYES, M.D.
17

18            **UNITED STATES DISTRICT COURT**
          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
19

20 | | | |
|---|---|---|
| **CARLO REYES, M.D., individually and on behalf of a class of those who are similarly situated,** | ) ) ) ) | Case No. _____ |
| **Plaintiff,** | ) ) ) | |
| v. | ) ) | **COMPLAINT** **CLASS ACTION** |
| **HCA HEALTHCARE, INC. and LOS ROBLES REGIONAL MEDICAL CENTER,** | ) ) ) ) | |
| **Defendants.** | ) ) | |

Plaintiff, Carlo Reyes, M.D., through counsel, alleges and states as follows:

## I.  PARTIES.

1. Plaintiff, **Carlo Reyes, M.D.**, is a citizen and resident of California.

2. On information and belief, Defendant **HCA Healthcare, Inc.** is the ultimate owner of Los Robles Regional Medical Center and is incorporated as a Delaware corporation with a principal place of business in Nashville, Tennessee. It may be served with process through its principal office address of One Park Plaza, Nashville TN 37203, or through its registered agent, The Corporation Trust Company, at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

3. On information and belief, Defendant **Los Robles Regional Medical Center**, doing business as Los Robles Hospital & Medical Center, is the owner and operator of an industry, business and/or facility licensed to do business and actually doing business in California, including at 215 West Janss Road, Thousand Oaks, Ventura County, California 91360.

## II.  VENUE AND JURISDICTION.

4. Venue is proper in this Court because the Defendants each do business within the boundaries of this judicial district and the Defendants operate Los Robles Hospital & Medical Center within the district.

5. This Court has jurisdiction over the matter and the parties.

6. This Court has diversity jurisdiction under 28 U.S.C. § 1332 in that this is a civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which any member of a class of plaintiffs is a citizen of a State different from any defendant;

any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or any member of a class of plaintiffs is a citizen of a State and any defendant is a citizen of a foreign state.

### III.  BACKGROUND FACTS.

7. Los Robles Hospital & Medical Center is the largest hospital in eastern Ventura County.  It is a hospital and medical center complex in the city of Thousand Oaks, California.  The City of Thousand Oaks is located approximately one hour to the northwest of Los Angeles.  Los Robles Hospital & Medical Center is a 382-bed acute care hospital with a level II trauma center.  The facility is owned by one of the nation's largest health care systems, for-profit HCA Healthcare.

8. HCA Healthcare, Inc. is the ultimate parent company of the HCA enterprise and was directly and materially involved through its officers and directors in making the pertinent decisions and undertaking the pertinent actions herein.  It is publicly held and listed with the Securities and Exchange Commission ("SEC").  HCA Healthcare, Inc. or its predecessors in interest have been named as respondents in numerous prior civil and enforcement proceedings brought by private litigants, the Centers for Medicare & Medicaid Services ("CMS"), the Federal Trade Commission ("FTC") and/or the U.S. Department of Justice ("DOJ"), including with regard to hospital business and employment issues.

9. HCA is the world's largest for-profit hospital chain.  It owns and operates over 180 hospitals in 21 states.  HCA's revenues were over $51 billion for 2020.  Its net income was over $3.7 billion in 2020.

3

10. Numerous physicians, nurses and other medical professionals work at HCA Healthcare's Los Robles Hospital & Medical Center. During the pertinent times, Dr. Carlo Reyes was employed as an emergency physician at the facility.

11. Dr. Reyes has been noted by HCA in public announcements for his work as one of the "HCA Healthcare Heroes" leading a team of physicians, nurses and clinical technicians who volunteered to serve impoverished areas in Honduras by providing access to medical care as the Los Robles Medical Mountain Team. Unfortunately, Dr. Reyes has now found that both he himself and numerous other physicians and professionals have not been paid by HCA for performing contractual agreed-upon services to instruct in HCA medical residency programs. Furthermore, Defendants have also failed to pay Dr. Reyes and others who are similarly situated for their work spent organizing and building these residency programs for HCA and from which HCA profits.

12. Dr. Reyes has been a physician practicing emergency medicine for 21 years. He worked for HCA at Los Robles for 21 years. He assisted Defendants to build the emergency medicine residency program at the hospital. He was formerly the medical director for the group.

13. HCA has numerous residency programs also known as graduate medical education ("GME") programs. Residency programs are beneficial to HCA because they allow the company to bring in and develop new physicians including ones who can be paid less than more experienced physicians. HCA also receives governmental benefits, subsidies and/or incentives for its residency programs. HCA has such residency programs at hospitals that it owns across the country. HCA states that it offers GME programs at 72 hospitals in 16 states.

14. HCA further markets its GME programs by touting the qualifications of the physicians who teach in the programs, for example stating on the HCA website: "From the moment a graduate joins an HCA Healthcare residency or fellowship, they are mentored by a dynamic network of physicians who are focused on teaching them to provide the exceptional, compassionate care our patients deserve. These programs are led by an accomplished faculty, set under rigorous standards, and tailored to provide extensive training for the next generation of physician leaders."

15. Defendants have leveraged and used the skilled qualifications and reputations of Dr. Reyes and other physicians as a basis to obtain approval and success of their residency programs and approval and accreditation from the Accreditation Council for Graduate Medical Education ("ACGME"), which is the body responsible for accrediting all graduate medical training programs for physicians in the United States.

16. When HCA launches a new residency program at a hospital, it incurs the labor of physicians and others in two respects. First, the physicians must invest the time, expense and labor in order to develop, organize, implement and begin the residency program at the hospital. Second, they must spend the time to teach and instruct the residents. Dr. Reyes and his colleagues performed both activities in connection with beginning and then instructing in the emergency medicine residency program at Los Robles.

17. Dr. Reyes and his colleagues at Los Robles have not been paid by Defendants for some or all of their work spent on both of these activities. Defendants failed to pay them for the time and resources they spent in setting up

the residency program. And, Defendants have failed to pay them for weeks and months of time spent teaching and instructing the residents that HCA has brought into the program.

18. More recently, HCA replaced Dr. Reyes and his emergency medicine physician group at Los Robles Hospital with a national medical staffing company, Team Health.

19. Dr. Reyes is informed and advised that at other HCA-owned hospitals in California and elsewhere, HCA has acted in a similar manner, failing and refusing to compensate physicians for their labor expended in launching and instructing in HCA residency programs.

20. HCA is believed to oversee the largest set of hospital residency programs in the nation. HCA markets its residency programs to the public and to medical program students and physicians and profits by the viability of these programs.

21. During the pertinent times, Defendants and/or their affiliates had contracts with Dr. Reyes and with other physicians under which Defendants were obligated to pay them both for their work staffing the emergency departments at Los Robles and other hospitals and their work treating patients there, and for their work incurred in teaching and instructing residents in the residency programs. However, Defendants have breached their contractual agreements by failing to pay Plaintiff and others who are similarly situated for some or all of their work in the residency program including time spent teaching residents.

22. When HCA determines to open a new residency program at one of its hospitals, HCA reaches out to physicians and requests that they spend time and

resources to take the necessary steps to develop and lay the groundwork to launch the program. The physicians including Dr. Reyes must complete applications and paperwork to qualify as academic faculty, must seek and obtain necessary approvals, and must create the requisite academic curriculum and schedule in preparation for approval. Moreover, Dr. Reyes and others similarly situated were coerced by Defendant to work prior to and without a separate executed academic faculty contract due to alleged time constraints to launch the program in time for the 2023 academic calendar for GME. This allowed HCA to delay such contracts until after the work to launch the program was completed.

23. This program development process takes many hours to accomplish, and HCA is well aware of that fact. Defendants were and are obligated to compensate Plaintiff and other similarly situated physicians for their time spent in engaging in such activities because the parties entered into an implied-in-fact or implied-in-law contract whereby HCA was obligated to pay them for their time, labor and service.

### IV.   CLASS ALLEGATIONS

24. Plaintiff seeks to represent a class defined as follows: All physicians who were employed at any HCA hospital residency program including any GME program at any HCA hospital facility over the last four years.

25. Under Rule 23(a)(1), the class is so numerous that joinder of all members is impracticable. HCA facilities have employed numerous physicians within the class definition within the last four years, both at Los Robles, at other HCA facilities in California, and at other HCA facilities nationwide.

26. Under Rule 23(a)(2), questions of law or fact common to the class include:

   a. Did Defendants hire or retain directly or indirectly physicians or other professionals to develop, open, and teach at HCA hospital residency programs?

   b. Did Defendants have an obligation to pay the physicians and professionals whom they hired, retained and contracted with to develop, open, and teach at HCA hospital residency programs?

   c. Did Defendants enter into contracts with materially common and uniform terms with physicians or others for them to instruct residents or otherwise provide services in conjunction with GME programs?

   d. Did HCA engage in a common policy and corporate practice of intentionally underpaying or failing to pay physicians and others for residency program instruction?

   e. Did HCA engage in a common policy and corporate practice of intentionally underpaying or failing to pay physicians or others for work in connection with developing and starting GME residency program?

   f. During the pertinent times, have Defendants failed to pay physicians or others for their work expended in connection with HCA's hospital residency programs?

   g. Are class members entitled to damages?

      h. Are class members entitled to equitable, declaratory and injunctive relief?

27. Under Rule 23(a)(3) the claims of the representative party are typical of the claims of the class. Dr. Reyes was employed as an emergency medicine physician at HCA's Los Robles hospital facility; he entered into one or more enforceable contracts with HCA or its affiliates including to provide labor and services; he provided labor and services in connection with the HCA residency program; and Defendants failed to pay him for his services. Moreover, his experience related to Defendants' conduct and their failure to pay is typical of the facts of members of the putative class.

28. Under Rule 23(a)(4), the representative party will fairly and adequately protect the interests of the class.

29. Under Rule 23(b)(1), a class action may be maintained because Rule 23(a) is satisfied and prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

30. Further, under Rule 23(b)(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

31. Further, under Rule 23(b)(3), the questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy, in light of a) the class members' interests in individually controlling the prosecution or defense of separate actions; b) the

extent and nature of any litigation concerning the controversy already begun by or against class members; c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and d) the likely difficulties in managing a class action.

32. In addition or in the alternative, under Rule 23(c)(4), when appropriate, an action may be brought or maintained as a class action with respect to particular issues, and in this matter, one or more relevant common issues are susceptible to class treatment and certification.

33. Upon certification of a class in this matter, Plaintiff is entitled under Rule 23(c)(2) for the court to direct appropriate notice to the class with regard to any class certified under Rule 23(b)(1) or (b)(2); and, is entitled for any class certified under Rule 23(b)(3) for entry of an order directing that the class members be provided with the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort, and using methods including United States mail, electronic means, or other appropriate means.

## CLAIMS FOR RELIEF

## COUNT I

**(Breach of Contract)**

34. Plaintiff incorporates by reference the foregoing allegations of paragraphs 1 through 33, as if fully rewritten herein.

35. Plaintiff brings this claim on behalf of himself and the members of the Class as a result of Defendants' agreement and intentional conduct to retain and permit himself and members of the Class to work for their benefit and for not paying them wages for all the time that they worked due to the failure to compensate for time spent in connection with developing, implementing and teaching and instructing in Defendants' residency programs.

36. As hereinabove alleged, the contractual agreements and terms of compensation established by Defendant promised employees such as the Plaintiff

that they would be paid wages for the hours they worked at appropriate and agreed rates.  Plaintiff and other members of the Class performed work and provided services during their employments in connection with the residency program under those terms of compensation. However, Plaintiff and other members of the Class were not paid for all of their work completed in connection with Defendants' residency program.

37. Defendants entered into enforceable agreements with the Plaintiff and class members to compensate them in connection with performing residency program related services.  Defendants breached their contracts by failing to pay all or some of the monetary amounts due.  As a result of Defendants' breach of contract, Plaintiff and members of the class have been damaged.

38. As a direct and proximate result of Defendant's breach of contract described herein, Plaintiff and other members of the class have been damaged in an amount to be determined at trial, including but not limited to all time worked by Plaintiff and other members of the class but not paid by Defendants.

39. Having injured Plaintiff and other members of the class, Defendants are liable to Plaintiff and other members of the class in the full amount of wages that remain unpaid, pre- and post-judgment interest as applicable, costs and reasonable attorney's fees as may be allowed by the Court, and such other and further relief as provided under law.

## COUNT II

### (Unjust Enrichment / Quantum Meruit)

40. Plaintiff incorporates by reference the foregoing allegations of paragraphs 1 through 39, as if fully rewritten herein.

41. This claim is pled in the alternative to the first claim for relief. Plaintiff brings this claim on behalf of himself and the members of the Class as a result of Defendants' unjust enrichment resulting from its intentional conduct in retaining and permit himself and members of the Class to work for their benefit and for becoming unjustly enriched by the expenditure of labor and conferral of

benefits upon Defendants by Plaintiff and class members, in connection with developing, implementing and teaching and instructing in Defendants' residency programs.

42. As hereinabove alleged, the Plaintiff and class members during the pertinent times conferred the benefit of their time and labor in connection with performing services in connection with residency programs for the Defendants. The benefits conferred were known to the Defendants and were not gratuitous.

43. Defendant has been unjustly enriched at the expense of Plaintiff and other members of the class. Defendant was unjustly enriched by the retention of the benefits conferred and by retaining and failing to pay the amounts that were earned and that rightfully belong to Plaintiff and other members of the class. Defendants were unjustly enriched in that it induced Plaintiff and other members of the class to perform work for the benefit of Defendants and retained the benefit of this work without having paid for the same.

44. Allowing Defendants to retain the benefits provided by Plaintiff and other members of the class as free, unpaid labor under the circumstances herein is demonstrably unjust. Defendant has retained the benefit of Plaintiff's and other members of the class's services without compensating them as promised, under circumstances in which it would be unjust and unconscionable to permit Defendant to retain the benefit and not to pay.

45. As a direct and proximate result of Defendant's unjust enrichment and quantum meruit described herein, Plaintiff and other members of the class have been damaged in an amount to be determined at trial, including but not limited to all time worked by Plaintiff and other members of the class but not paid by Defendant.

46. Having injured Plaintiff and other members of the class, Defendants are liable to Plaintiff and other members of the class in the full amount of regular wages that remain unpaid, pre- and post-judgment interest as applicable, costs and

reasonable attorney's fees as may be allowed by the Court, and any other and further relief as provided under law.

## COUNT III

### (Equitable, Declaratory and Injunctive Relief)

47. Plaintiff incorporates by reference the foregoing allegations of paragraphs 1 through 46, as if fully rewritten herein.

48. In addition or in the alternative to the above-alleged claims for relief, Plaintiff hereby shows that the facts and circumstances above warrant the imposition by the Court of equitable, declaratory and injunctive relief including but not limited to entry of an order obligating Defendants to reform their ongoing conduct and corporate policies and granting other injunctive and equitable relief.

49. Pursuant to 28 U.S.C. § 2201, the Court has the authority to declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

50. Wherefore, the Plaintiff requests that the Court enter an order providing appropriate equitable, declaratory and injunctive relief to Plaintiff and to the putative class herein.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and other members of the putative class, prays that this Honorable Court:

A. Certify this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of Plaintiff and other members of the class;

B. Enter judgment against Defendant, and in favor of Plaintiff and the class, declaring that Defendant's activities, as alleged herein, violate the law and enjoining Defendant from continuing to violate the law, as well as awarding the damages and other relief set forth herein;

C. Award compensatory damages to Plaintiff and the class in the amount of their unpaid wages, as well as any other compensatory or exemplary damages as may be appropriate and supported by the evidence;

D. Designate Plaintiff as representative of the Fed. R. Civ. P. 23 class, and counsel of record as Class Counsel for the class;

E. Award Plaintiff, and members of the class, prejudgment interest, post-judgment interest, costs, and any attorneys' fees, expert fees, as well as statutory and/or punitive damages as may be appropriate and supported by the evidence; and

F. Enter such other and further relief as this Court deems equitable, just, and proper.

Dated:   July 26, 2024.

/s/ David J. Millstein
**MILLSTEIN & ASSOCIATES PC**
David J. Millstein
Email: dmillstein@millstein-law.com
California Bar No. 87878
100 The Embarcadero, Ste Penthouse
San Francisco, CA 94105
Telephone: 415-348-0348
Facsimile: 415-348-0336

**WALLACE AND GRAHAM, P.A.**
Mona Lisa Wallace, N.C. State Bar #9021*
Email: Mwallace@wallacegraham.com
John Hughes, N.C. State Bar # 22126*
Email: Jhughes@wallacegraham.com
Olivia Smith, N.C. State Bar # 58375*
Email: Osmith@wallacegraham.com
525 N. Main Street
Salisbury, NC 28144
Telephone: (704) 633-5244
Facsimile:  800-849-5291
*pro hac vice application to be filed*

*Attorneys for Plaintiff*